### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA RIVERA, | : | NO. 3:25-CV-537 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| JEFFREY REICHL AND | : | |
| GARY J. SAYLOR, II, | : | |
| Defendants. | | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Linda Rivera initiated this civil action against her former husband and his divorce attorney seeking $8 million in damages, restoration of her parental rights, and other relief related to a state court divorce and child custody proceeding. Because she has failed to state a claim upon which relief can be granted, the Defendants' motions to dismiss will be granted.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff Rivera alleges, in conclusory and often confusing fashion, that Defendant Jeffrey Reichl, who was apparently at one time married to Plaintiff, and his attorney, Defendant Gary J. Saylor II, somehow violated Rivera's civil rights and deprived her of custody of and contact

with her children. Doc. 1 at 9-11.[1] Rivera alleges that, between 2023 and 2025, the Defendants made false claims, "engaged in a systematic effort to alienate plaintiff from her children," "manipulated state court proceedings," and "conspired to obstruct justice . . . all while acting under color of law[.]" Doc. 1 at 15-20. Rivera claims that, as a result of this misconduct, she lost custody of her minor children to Defendant Reichl. *Id.* ¶ 10. Rivera also alleges misconduct on the part of a Monroe County Court of Common Pleas Judge and her own attorneys, none of whom are parties to this case. It is unclear from the complaint what the procedural posture of the state court proceedings currently are, but it appears that some aspects of the case are still ongoing, while others have concluded.

### B.    Procedural History

On March 19, 2025, Rivera filed a complaint alleging six counts: 1) violation of due process under the 14th Amendment to the U.S. Constitution; 2) violation of parental and children's rights; 3) violation of habeas corpus under 28 U.S.C. § 2241; 4) deprivation of rights under

---

[1] In considering this motion to dismiss, the Court accepts all factual allegations in the Complaint as true and draws all inferences from the facts alleged in the light most favorable to Rivera. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

color of law under 42 U.S.C. § 1983; 5) conspiracy to interfere with civil rights under 42 U.S.C. § 1985; and 6) violations of the False Claims Act under 31 U.S.C. §§ 3729-3733. Doc. 1 ¶¶ 51-66.

Defendant Reichl filed a motion to dismiss and brief in support on April 2, 2025 (Docs. 16, 17), and Defendant Saylor filed the same on April 14, 2025 (Doc. 28). Plaintiff filed briefs in opposition on April 16 and 18, 2025. Docs. 30, 35. No reply briefs have been filed and the time for such filing has passed. The motions are therefore ripe for disposition by this Court.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified).

A district court must conduct a three-step analysis when considering the sufficiency of a complaint under Rule 12(b)(6). *Malleus v.*

*George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A complaint filed by a *pro se* litigant is to be liberally construed and "however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (*quoting Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.  ANALYSIS

All of Plaintiff Rivera's claims are fatally flawed and will be dismissed. Plaintiff invites this Court to undo what a state court has done, and this Court must decline. In her briefs in opposition to Defendants' motions, she fails to defend any of her claims other than those brought under Sections 1983 and 1985. Rivera's failure to address the substance of Defendants' arguments regarding the defects in her complaint are, standing alone, sufficient to warrant dismissal of the abandoned claims. *See, e.g.*, *Tambasco v. United States Dep't of Army*, No. 17-1857, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018); *Sikkelee v. Precision Airmotive Corp.*, No. 07-886, 2011 WL 1344635, at *4 (M.D. Pa. Apr. 8, 2011) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Lada v. Delaware Cnty. Cmty. Coll.*, No. 08-4754,

2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."); *Fiedler v. Stroudsburg Area Sch. Dist.*, 427 F. Supp. 3d 539, 554-55 (M.D. Pa. 2019).

Nonetheless, because Plaintiff is proceeding *pro se*, the Court will analyze the merits of her claims and explain the substantive reasons for the dismissal of each.

First, the Court cannot grant the relief Rivera seeks because it would require undoing what a state court has done or interfering with an ongoing state court proceeding. This Court will do neither.

To the extent Rivera seeks to nullify the outcome of a completed state court proceeding or portion thereof, or any order of a state court, by suing her state-court adversary and his attorney, this Court cannot act as a pseudo-court of appeals, reviewing and reversing state court decisions. Because plaintiff urges the Court, in effect, to sit as a state appellate court and vacate prior state court rulings, her complaint encounters an insurmountable threshold legal obstacle. This Court lacks subject matter jurisdiction over these issues, which necessarily invite a

federal court to review, re-examine, and reject state court rulings in a state domestic relations case.

Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the *Rooker-Feldman* doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L. Ed. 2d 362, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court...." *See also Desi's Pizza, Inc. v. City of Wilkes Barre*, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." *Desi's Pizza*, 321 F.3d at 419.

*Gary v. Braddock Cemetery*, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." *Turner v.*

*Crawford Square Apartments III, LLP*, 449 F.3d 542, 547 (3d Cir.2006).

Cases construing this jurisdictional limit on the power of federal courts

have quite appropriately:

> emphasized the narrow scope of the *Rooker-Feldman* doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [E*xxon Mobil Corp. v. Saudi Basic Industries Corp*.], 544 U.S. at 284, 125 S.Ct. at 1521-22, 161 L. Ed. 2d 454; *see also Lance v. Dennis*, 546 U.S. 459, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

*Id.*

In *Centifanti v. Nix*, 865 F.2d 1422 (3d Cir. 1989), the Third Circuit,

quoting Justice Marshall in *Pennzoil v. Texaco, Inc.*, 481 U.S. 1 (1987),

provided guidance in determining when a constitutional claim is

"inextricably intertwined" with the particular decision of a state court for

purposes of barring the district court's jurisdiction to hear the case under

the *Rooker-Feldman* doctrine:

> While the question of whether a federal constitutional challenge is inextricably intertwined with the merits of a state court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be

> predicated upon a conviction that the state court proceeding
> was wrong, it is difficult to conceive that the federal
> proceeding as, in substance, anything other than a prohibited
> appeal of the state court judgment.

*Centifanti*, 865 F.2d at 1430 (quoting *Pennzoil*, 481 U.S. at 25) (Marshall,

J., concurring); *accord*, *FOCUS v. Allegheny Cnty. Court of Common*

*Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) (finding plaintiff's federal

constitutional claim inextricably intertwined with the state court

decision "if the relief requested in the federal action requires determining

that the state court decision is wrong or would void the state court's

ruling. . . .") (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983

(8th Cir. 1995)).

This is especially true here, where Rivera asks this Court to

interfere with a state court adjudication of divorce and child custody

matters, which the federal courts have no jurisdiction over. The domestic

relations exception "divests the federal courts of power to issue divorce,

alimony, and child custody decrees," *Ankenbrandt v. Richards*, 504 U.S.

689, 703 (1992), because it has long been settled that "[t]he whole subject

of the domestic relations of husband and wife . . . belongs to the laws of

the states, and not to the laws of the United States," *Ex parte Burrus*,

136 U.S. 586, 593-94 (1890); *see also Daniels v. Cynkin*, 34 F. Supp. 3d 433, 441 (D.N.J. 2014), *aff'd*, 597 F. App'x 704 (3d Cir. 2015).

Here, in addition to millions of dollars in damages, Rivera asks this Court to "stay[ ] all state court proceedings related to the wrongful removal of Plaintiff's minor children," order the return of those children, grant her an at-fault divorce, and restore her parental rights. Doc. 1 at 23. That would directly undo the orders of the Monroe County Court of Common Pleas, and tread upon areas of domestic relations outside the bounds of federal power. *Rooker-Feldman* prohibits any such action and deprives this Court of jurisdiction over Rivera's claims.

Further, to the extent the state court proceedings that Rivera challenges are still pending in Monroe County, the Court must abstain from exercising jurisdiction over those claims as well. This Court has an obligation to abstain from considering certain types of cases pursuant to the principles of *Younger v. Harris*, 401 U.S. 37 (1971). "To promote comity between the national and state governments," the *Younger* abstention doctrine "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 461 (3d Cir.

2019) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)). The *Younger* abstention doctrine prohibits this Court from considering Rivera's claims while the child custody and divorce proceedings are still pending in state court.

As the Third Circuit has explained, "*Younger* abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." *Kendal v Russell*, 572 F.3d 126, 130 n.3 (3d Cir. 2009) (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)). The doctrine contemplates three legal requirements that must be met before a court exercises its discretion to abstain: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Kendall*, 572 F.3d at 131 (citing *Matusow v. Trans-County Title Agency, LLC*, 545 F.3d 241, 248 (3d Cir. 2008)).

The state court divorce and custody case challenged here is precisely the type of proceeding that implicates important interests of the state. "[I]t is beyond question that matters of domestic relations and child

custody are quintessentially of state importance." *Romanova v. Epp*, No. 17-2720, 2017 WL 1907868, at *2 (D.N.J. May 8, 2017) (citing *Ankenbrandt*, 504 U.S. at 702-04 (recognizing an exception to federal diversity jurisdiction for cases involving divorce, alimony, and child custody)); *see also Brunetta v. Testa*, 2010 WL 1491413, at *3 (D.N.J. 2010) ("The heart of Plaintiff's matter involves his divorce and child custody dispute. All of Plaintiff's dissatisfaction with Defendant arose from the way the judge handled his divorce and child custody proceeding. . . . Federal courts in the United States generally refrain from intervening in domestic relations cases because domestic relations are preeminently matters of state law. The proclivity of federal courts to abstain from interference in domestic relations cases shows the important state interest in keeping domestic disputes in state courts.") (citation modified) (citing *Mansell v. Mansell*, 490 U.S. 581, 587 (1989)); *Dixon v. Kuhn*, 257 F. App'x 553, 555 (3d Cir. 2007) (barring appeal to federal court in child support proceeding under *Younger* abstention); *Harbour v. Grahm*, 2009 WL 2488145, at *4 (D.N.J. 2009) (holding that, under *Younger*, plaintiff must raise constitutional challenges regarding his child custody case in state court where proceedings are ongoing)); *Anthony v. Council*, 316 F.3d

412, 418 (3d Cir. 2003) (noting that *Younger* has been applied to civil enforcement proceedings and to other civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions, and that the state has an overriding interest in ordering, monitoring, enforcing and modifying child support obligations).

With regard to the third element of the *Younger* abstention doctrine, there is no indication that Plaintiff does not have the ability to challenge the decisions of the judge presiding over the divorce and custody case in the state court, or advance her claims against the Defendants in state court. *See, e.g., Anthony*, 316 F.3d at 422 ("Plaintiffs have the opportunity to raise their claims in any child support hearing and to appeal adverse decisions through the state appellate system and eventually to the United States Supreme Court."); *Romanova*, 2017 WL 1907868 at *2 (finding that to the extent the plaintiff contended that her constitutional rights were violated by the state court, the plaintiff certainly had the opportunity to raise those issues on appeal); *Brunetta*, 2010 WL 1491413 at *3 (citing *Pennzoil*, 481 U.S. at 17 (providing that there is a general presumption that a plaintiff can present federal claims

in the related state court proceeding unless plaintiff argues otherwise). Here, Plaintiff makes broad, conclusory assertions that the state court proceeding has been "manipulated," but has failed to make any showing that she has not been or will not be afforded the opportunity to appeal adverse decisions or seek redress in state court.

The Court recognizes that Plaintiff's state court divorce and child custody case has not progressed as she has wished, she feels unjustly alienated from her children, and she seeks this Court's intervention to provide her compensation and ultimately the ability to have parenting time with her children. Plaintiff has every opportunity to seek such relief in the state court and to pursue appellate review of any adverse rulings. It is in that forum and through that process that Plaintiff's claims may be heard without unwarranted interference from this Court. This Court is precluded, therefore, from providing Plaintiff with any of her requested relief.

For these reasons, Plaintiff's complaint will be dismissed. Because, for each of Plaintiff's claims, no jurisdiction exists under *Rooker-Feldman* or the Court must abstain under *Younger*, amendment would be futile. Additionally, each count fails to state a claim on which relief can be

granted, which the Court will address in turn. To be clear, the individual substantive shortcomings of each count provide independent, alternative grounds for dismissal in addition to the jurisdictional bars discussed above.

### A.    Count One: 14th Amendment Due Process

First, Rivera claims that the Defendants, acting under color of law, deprived her of her right to custody of her children without due process of law. The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013). The Fourteenth Amendment does not grant a private right of action, but the Court, construing the *pro se* complaint broadly, will review this claim as a Section 1983 claim, which allows persons to seek relief for constitutional claims in federal court.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow*

*v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013) (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)).

Here, Plaintiff has alleged that the Defendants, two private individuals, deprived her of due process, but fails to explain how they were acting under color of law. Plaintiff does not allege any specific facts to show that Defendant Reichl acted under color of law. She alleges, in conclusory fashion, that Defendant Saylor acted under color of law by "conspiring with state officials" (Doc. 1 at 22), but alleges no facts to support that allegation.[1] Defendant Saylor is a private attorney who represented Defendant Reichl in the divorce proceedings, the outcome of which Rivera takes issue with. The Supreme Court and the Court of Appeals for the Third Circuit have consistently held that private attorneys are not state actors for the purposes of § 1983. *See*, *e.g.*, *Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); *Henderson v. Fisher*,

---

[1] Broadly speaking, Rivera's complaint is replete with "bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff," of the type the Court is directed to discard. *Iqbal*, 556 U.S. at 678.

631 F.2d 1115, 1119 (3d Cir. 1980) ("Although states license lawyers to practice, and although lawyers are deemed 'officers of the court,' this is an insufficient basis for concluding that lawyers act under color of state law for the purposes of 42 U.S.C. § 1983. Liability under 42 U.S.C. § 1983 cannot be predicated solely on the state's licensing of attorneys. Participation in a highly regulated profession does not convert a lawyer's every action into an act of the State or an act under color of state law."); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (same).

Rivera has failed to allege any state action on the part of the Defendants. Thus, Count One fails to sate a claim upon which relief can be granted.

## B.    Count Two: Parental and Children's Rights

Rivera next alleges a nebulous violation of her fundamental liberty interest in the care, custody, and control of her children. Doc. 1 at 20. Asserting infringements of the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments as well as "common law parental rights," Rivera nonetheless fails to identify any authority for a private right of action on these bases. If the Court construes this claim as a civil rights

violation under § 1983, it fails for the reasons that Count 1 fails. Even reading the *pro se* complaint liberally, the Court can identify no valid cause of action with respect to Count Two.

### C.    Count Three: 28 U.S.C. § 2241 – Habeas Corpus

Rivera next seeks habeas corpus relief pursuant to § 2241 to compel the return of her children to her custody. This Court has no jurisdiction to grant such a request.

Section 2241 "authorizes a federal court to issue a writ of habeas corpus to any pretrial detainee who 'is in custody in violation of the Constitution or laws or treaties of the United States,'" including state pre-trial detainees. *Duran v. Thomas*, 393 F. App'x 3, 4 (3d Cir. 2010) (quoting *Moore v. DeYoung*, 515 F.2d 437, 442 n.5 (3d Cir. 1975)). While "custody" for habeas purposes has been interpreted broadly to include situations beyond pure criminal detention, a petitioner will only be considered in "custody" for habeas purposes where he is "subject both to 'significant restraints on liberty . . . which [are] not shared by the public generally,' along with 'some type of continuing governmental supervision.'" *See*, *e.g.*, *Obado v. New Jersey*, 328 F.3d 716, 717 (3d Cir. 2003). That broad definition excludes challenges to the termination of

parental rights, the loss of custody over one's children, or the placement of one's children in foster care. *Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 509-12 (1982); *see also Roundtree v. New Jersey*, No. 17-581, 2017 WL 507597, at *3 (D.N.J. Feb. 7, 2017) ("habeas corpus jurisdiction does not exist to challenge" state court child custody determinations).

Thus, Count Three will be dismissed.

### D.    Count Four: 42 U.S.C. § 1983 – Deprivation of Rights Under Color of Law

Count Four alleges generally that the Defendants "engaged in misconduct under color of law, resulting in the deprivation of Plaintiff's constitutional rights." Doc. 1 at 21. Rivera fails to identify what rights were allegedly violated, but it is of no matter. No § 1983 claims can succeed against the Defendants, who are not state actors, for the reasons explained above. Count Four will be dismissed.

### E.    Count Five: 42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights

Next, Rivera alleges that the Defendants "conspired to obstruct justice, suppress evidence, manipulate court proceedings, and unlawfully deprive Plaintiff of her fundamental parental rights." Doc. 1 at 21. She

specifically avers that "Attorney Saylor knowingly participated in this conspiracy by filing fraudulent legal motions, obstructing Plaintiff's due process rights, and working in tandem with judicial officers to further this deprivation." *Id.*

Section 1985 contains three subsections, each of which sets forth a separate cause of action. Rivera does not specify which subsection she intends to invoke, but the heart of her claim is that the Defendants conspired to deprive her of fundamental rights. The Court will therefore construe Count Five as alleging a claim under § 1985(3).[1]

"[I]n order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or

---

[1] If Rivera meant instead to invoke § 1985(2), that claim fails for the same reasons. To state a claim under Section 1985(2), plaintiffs must allege defendants "colluded with the requisite 'racial, or . . . otherwise class-based, invidiously discriminatory animus.'" *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999) (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)). Thus, as with a § 1985(3) claim, the absence of invidiously discriminatory purpose and the lack of a conspiracy are fatal to this claim.

the deprivation of any right or privilege of a citizen of the United States."
*Rose v. Tyndale*, No. 23-1203, 2023 U.S. App. LEXIS 19478, at *2-3 (3d Cir. July 28, 2023) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)).

Rivera does not allege any facts that suggest any of the Defendants' actions with which she takes issue were "motivated by a racial or class based discriminatory animus." Indeed, her complaint alleges sufficient facts to conclude the motivation was not race or class based. The motivation behind the alleged conspiracy, as Rivera describes it, was to deprive her of custody of her children.

Additionally, Rivera has failed to plead a conspiracy under § 1985. Rivera's only specific factual assertions regarding Defendant Saylor's role in the conspiracy involved filing legal motions and working with judicial officers in some unspecified way. Doc. 1 at 21. But those are simply acts undertaken in the course of an attorney's official duties acting on behalf of his client, and cannot, as a matter of law, evidence a conspiracy.

This situation implicates the "intracorporate conspiracy doctrine," which posits that there cannot be any conspiracy between a corporation

and its officer, who is part of the corporation, because a corporation cannot conspire with itself. The same rule exists for attorneys. *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) (holding that filing of a frivolous lawsuit and dissemination of defamatory information may "violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge under section 1985"). To state a § 1985 claim in this context, a plaintiff must allege that the attorney "is acting in a personal, as opposed to official, capacity." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003); *see also Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) ("as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy") (citing *Heffernan*, 189 F.3d 413). Rivera has not alleged, and the Court's liberal reading of the *pro se* complaint has not revealed, any facts that suggest Saylor was acting in a personal capacity. To the contrary, all of Rivera's allegations center on Saylor acting as Reichl's attorney in the state court case.

Because Attorney Saylor cannot have conspired with his client, Reichl, the complaint fails to allege a conspiracy. Thus, lacking two of the

necessary elements to state a claim under § 1985, Count Five will be dismissed.

### F.    Count Six: False Claims Act

Rivera next asserts that the Defendants "engaged in a collusive scheme to fabricate false allegations of mental illness," which she claims violates the False Claims Act (31 U.S.C. §§ 3729-3733), "invoking *qui tam* provisions." Doc. 1 at 22. This claim is improperly asserted for a number of reasons and will be dismissed.

"Congress penalizes fraud upon the United States government through the False Claim[s] Act . . . ." *Laulopez v. Transunion Consumer Servs., LLC*, No. 23-1242, 2023 WL 7130616, at *4 (M.D. Pa. Oct. 30, 2023), *report and recommendation adopted sub nom.*, *Laulopez Est. v. Transunion Consumer Servs., LLC*, No. 23-1242, 2024 WL 454944 (M.D. Pa. Feb. 6, 2024). The FCA provides, in part, that "any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty . . . ." 31 U.S.C. § 3729(a)(1)(A)-(B). The FCA also provides that "[a private] person

may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1). This type of action is called a *qui tam* suit. In reviewing the dismissal of a claim under the FCA, the Third Circuit wrote:

> The False Claims Act enables private parties, known as relators, to bring enforcement actions on behalf of the United States to recover funds which were fraudulently obtained, and to share in any resulting damages award. 31 U.S.C. § 3729, *et seq.*; *see also United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304-05 (3d Cir. 2011). When a relator files a *qui tam* suit, the action is deemed to be brought "for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). Indeed, "while the False Claims Act permits relators to control the False Claims Act litigation, the claim itself belongs to the United States." *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008). We have held, however, that an individual proceeding pro se may not represent third parties in federal court. *See Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010); *see also* 28 U.S.C. § 1654 (providing that in federal court, "parties may plead and conduct their own cases personally or by counsel"). Therefore, a pro se litigant may not pursue a *qui tam* action on behalf of the Government. *See Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 245 (4th Cir. 2020) (recognizing that "[t]his stance is in accord with the decisions of our sister circuits that have addressed this issue").

*Ajjahnon v. St. Joseph's Univ. Med. Ctr.*, 840 F. App'x 667, 668 (3d Cir. 2020).

Further, "[t]o state a claim under the False Claims Act, a plaintiff must allege '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" *Gibson v. Johnson & Johnson*, No. 22-4383, 2023 WL 4851413, at *4 (E.D. Pa. July 28, 2023) (quoting *United States v. Gilead Scis., Inc.*, 596 F.Supp.3d 522, 536 (E.D. Pa. 2022) and citing *United States v. Kindred Healthcare, Inc.*, 517 F.Supp.3d 367, 379 (E.D. Pa. 2021)).

Here, Plaintiff is proceeding *pro se*, and it is clear she cannot do so and maintain an action on behalf of the United States under the FCA. *Ajjahnon*, 840 F. App'x at 668. Further, Plaintiff attempts to use the FCA to bring a defamation-type claim against the Defendants for the alleged false claims it made against her. This is simply not what the FCA contemplates. Plaintiff's claim "as pleaded also does not seek an enforcement action on behalf of the United States but instead seeks relief only for [herself]." *Laulopez*, 2023 WL 7130616, at *4. Moreover, "[t]he

Court cannot discern how Defendants' relationship with [her] would involve the United States government, let alone fraud upon the government." *Id.*

Accordingly, Plaintiff's claim under 31 U.S.C. § 3729 *et seq* will be dismissed. Amendment would be futile as Plaintiff cannot state a claim under the FCA on her own behalf, cannot bring a claim under the FCA on behalf of the United States because she is proceeding *pro se*, and has not alleged fraud on the United States government.

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, based on the facts alleged in the complaint and the exhibits attached thereto, it is clear that amendment would be futile. None of the claims are amenable to correction or amendment because they are based on fundamental misunderstandings of the law, and all are barred by the *Rooker-Feldman* and *Younger* doctrines. *See, e.g., Stephens v. Manley Deas Kochalski, LLC*, No. CV 16-3845, 2016 WL

6804441, at *3 (E.D. Pa. Nov. 16, 2016), dismissed, No. 16-4346, 2017 WL 11776722 (3d Cir. Apr. 6, 2017) (stating "[b]ecause none of plaintiff's four counts has a legal basis, amendment would be futile and I will dismiss her complaint without leave to amend"); *Owens v. U.S. Bank Tr. Nat'l Ass'n as Tr. for RCF 2 Acquisition Tr.*, No. CV 24-6372, 2025 WL 996419, at *7 (E.D. Pa. Mar. 31, 2025) (finding amendment futile where claims are barred by the *Rooker-Feldman* doctrine); *Lirong Xu v. Todd*, No. 1:25-CV-00439, 2025 U.S. Dist. LEXIS 195947, at *9 (M.D. Pa. Oct. 3, 2025). Therefore, the complaint will be dismissed with prejudice and without leave to amend.

## V.    CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are GRANTED, and the Plaintiff's complaint is DISMISSED WITH PREJUDICE. Accordingly, the Plaintiff's Motion to Disqualify Counsel (Doc. 42) is DENIED as moot.

An appropriate order follows.

Date: October 7, 2025                     s/*Sean A. Camoni*
                                          Sean A. Camoni
                                          United States Magistrate Judge